**Rita V. DE MARTINEZ, Plaintiff,**

v.

**The Honorable John W. GARDNER, Secretary of Health, Education and Welfare of the United States, Defendant.**

**Civ. No. 627–67.**

United States District Court
D. Puerto Rico.

Sept. 11, 1968.

---

Edelmiro Martinez Rivera, San Juan, P. R., for plaintiff.

Francisco A. Gil, Jr., U. S. Atty., San Juan, P. R., for defendant.

## OPINION

CANCIO, Chief Judge.

This is an action brought before this Court pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A., Section 405(g) to review a final decision of the Secretary of Health, Education and Welfare set forth in the decision reached by the Hearing Examiner on December 19, 1966 (Tr. 5) and which became a final decision of the Secretary on July 17, 1967, when the Appeals Council denied plaintiff's request for review (Tr. 1). The final decision holds that the plaintiff is not entitled to old-age social security benefits on the basis of her application filed on July 16, 1965.

The Hearing Examiner rested his decision on his finding that the evidence adduced in this case does not support the conclusion that the claimant was employed by Compañía de Fianzas de Puerto Rico from January 1, 1963, through June 1965, and that the amount allegedly paid to her by Compañía de Fianzas de Puerto Rico was actually paid and constituted "wages" under the Social Security Act.

Based upon the ground that the pleadings on file, together with the transcript of the administrative record attached to the answer show that there is no genuine issue as to the material facts of the case, the defendant has moved for a summary judgment in his favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure. This the plaintiff has opposed.

The question presented and submitted with supporting briefs from each side is whether under the Social Security Act there existed an employer-employee relationship between the Compañía de Fianzas de Puerto Rico and plaintiff during the period from January 1, 1963 through June 1965.

On this question the Court is empowered to enter upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. 42 U.S.C.A. Section 405(g).

■ Whether plaintiff is entitled to social security benefits as an "employee" presents an "issue of law" rather than of fact, involving construction of Section 210(j) of Title II of the Social Security Act and, hence, the rule that reviewing court must accept finding of Secretary of Health, Education and Welfare if supported by substantial evidence is inapplicable here. Carroll v. Social Security Board, (C.C.A.7, 1942) 128 F.2d 876; Celebrezze v. Wifstad, (C.C.8) 314 F.2d 208 (1968).

In Universal Camera Corporation v. National Labor Relations Board (1951) 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456, the Supreme Court of the United States directed and cautioned that

"Courts must now assume more re-sponsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function."

In Scott v. Celebrezze, 241 F.Supp. 733, 736 (S.D.N.Y.), Judge Feinberg emphasized how searching must be the review of the courts of the action of the Secretary, and mentioned that in the cases reported in volumes 227–236 of Federal Supplement, the Secretary's decision was upheld *only 27 times*, but reversed or remanded 47 times.

■ In the exercise of its power to affirm, modify or reverse the decision in this case, with or without remanding the cause for a rehearing, this Court does not take the administrative decision as conclusive in view of the fact that the ruling of the Hearing Examiner excludes from the ambit of the Social Security Act payments that, we think,

were included by Congress. Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946).

FACTS

So far as they are important to the legal issues here, the facts are simple and taken from the record may be synthesized as follows:

1. Compañía de Fianzas de Puerto Rico is a bonding surety company organized on May 15, 1961 under the Insurance Code of Puerto Rico. It was approved and chartered by the Insurance Commissioner of the Commonwealth of Puerto Rico on August 8, 1961. By virtue of Sec. 29.050(1) of said Code it acquired juridical personality in its own name for the duration of its existence.

2. Edelmiro Martínez Rivera is the husband of the claimant and the President and majority stockholder of the named Corporation, which is a family corporation. The Company was organized by Edelmiro Martínez Rivera, his wife Rita V. de Martínez, his son Edelmiro Martínez, Jr., his brother-in-law Oscar Vere, and his daughter-in-law Ann Damiano Martínez. (Tr. page 45). All of them constituted the initial Board of Directors. (Tr. page 203).

3. Plaintiff was elected, qualified and served as officer of the Corporation and as its Secretary from August 1961 through 1965. (Tr. pages 205–221).

4. At a meeting of the stockholders held on January 10, 1963, the Assembly voted the salaries of the officers of the Corporation, effective from January 1, 1963 at $3,000 monthly for the President; $300 monthly for the Treasurer, and $300 monthly for the Secretary. (Tr. page 214).

5. The monthly salaries of the officers of the Corporation, approved and assigned as stated, were entered in the accounting books of the Company and credited monthly in their individual names. The entries show the $300

monthly salary credited and paid to the claimant. (Tr. pages 109–117).

6. A Field Representative of the Social Security Administration investigated at the offices of the Compañía de Fianzas de Puerto Rico and determined that the checks listed in the Examiner's decision had been issued to the plaintiff, and verified that the accounting books of the Corporation indicated that $300.00 monthly *"had been paid as salary to the claimant."* (See Examiner's decision, Tr. page 8).

7. The employer's and the employee's social security tax on the wages paid to plaintiff were reported and paid to the U. S. Internal Revenue Service as required by the Social Security Act.

8. Plaintiff's application for old age insurance benefits rests on the total amount of wages paid to her in her employment with Compañía de Fianzas de Puerto Rico from January 1, 1963 to June 30, 1965.

The study of the case by the Hearing Examiner resulted in his denial of plaintiff's application on his conclusion that "the services rendered by the plaintiff were not in pursuit of a valid employer-employee relationship with Compañía de Fianzas de Puerto Rico but were rendered *as a friendly gesture to a family corporation and that the amounts paid to her do not constitute 'wages' under the Social Security Act."* (Emphasis supplied).

■ 1. We take a different view. As an officer of the corporation Compañía de Fianzas de Puerto Rico that she was, plaintiff was unquestionably an "employee" of said Compañía de Fianzas de Puerto Rico which in turn also unquestionably was her "employer" for the purpose of the Social Security Act.

Section 210(j) of the Social Security Act defines the term "employee" thus:

"(j) The term 'employee' means—
(1) any officer of a corporation;
\* \* \* \* \* \*

Section 210(e) defines the term "American employers" as

"(e) The term 'American employer' means an employer which is \* \* \*
(6) a corporation organized under the laws of the United States or of any State."

Section 210(a) defines "employment" thus:

"(a) The term 'employment' means \* \* \* *and any service, of whatever nature,* performed after 1950 either (A) by an employee for the person employing him, irrespective of the citizenship or residence of either (i) within the United States, \* \* \* or (B) outside the United States by a citizen of the United States as an employee (i) of an American employer (as defined in subsection (e) \* \* \*."

Since it is conceded that the plaintiff was an officer of Compañía de Fianzas de Puerto Rico from the time of its inception on May 15, 1961 in the position of Secretary to which office she was elected on September 1, 1961, it was plain disregard of the law by the Hearing Examiner not to acknowledge the existence of plaintiff's employer-employee relationship with Compañía de Fianzas de Puerto Rico.

Considering the explicit and clear expression of Congress in the Act that *"any officer of a corporation"* is an employee for the purpose of the Social Security entitlement, surely the Hearing Examiner erred inescapably in disregarding the letter and spirit of the statutory definition to exclude the plaintiff from its plain coverage.

The definition of employment *"as any service, of whatever nature,* \* \* \* performed by an employee for the person employing him" with the purpose of the Social Security Act in mind import breadth of coverage.

■ "Service" as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer. Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718.

■■ The reference in the Act *"to any service"* with the all embracing words *"of whatever nature"* leaves no room for an administrative restriction of their connotation to make them less inclusive. There is nothing in the Act from which this Court could justly and in good conscience accept the Examiner's substitution of Congress's standard of *"any service of whatever nature"* to his own plus or minus degree of work ideas. Any restrictive application of the Act based on the quality or quantity of work or service performed is certainly unacceptable.

■ The statement of the Hearing Examiner (Tr. middle of page 9) that "the necessary functions for any Secretary of a corporation to perform are for the most part minor activities and do not require a full-time every day endeavor of the person performing them" is certainly devoid of evidence in the record. But even if what it implies were true, still it would not affect plaintiff's claim because as we have seen the statutory definition of "employment" means "any service, of whatever nature performed by an employee after 1950", no matter whether the individual *is employed full or part-time*, or how the payments are measured, or how they are paid. See Circular E Employer's Tax Guide (U. S. Treasury Department-Internal Revenue Service) page 3(4), where we read:

"If the relationship of employer and employee exists, the description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus it is of no consequence that the employee is designated as partner, coadventurer, agent, or independent contractor. *It does not matter how the payments are measured, or how they are paid or what were they called. Also, it does not matter whether the individual is employed full or part-time."* (Emphasis supplied).

"Secretary of Health, Education and Welfare has no power to add restrictions to social security standards enacted by Congress. Social Sec. Act, Sec. 1 et seq. 42 U.S.C.A. Secs. 301 et seq." Lee v. Gardner [D.C.], 267 F. Supp. 578.

"Because Social Security Act is remedial it should be liberally construed as a whole and any rule which would limit coverage of Act should itself be strictly construed." Pearson v. Gardner [D.C.], 267 F.Supp. 498; Comb v. Gardner [6 Cir.], 382 F.2d 949; Cancel v. Gardner, (D.C.Puerto Rico) (1967) 268 F.Supp. 206.

"Congressional policy underlying Federal Social Security legislation requires court to interpret Act liberally, and any doubt should be resolved in favor of coverage." Rassmussen v. Gardner [10 Cir.], 374 F.2d 589 (1967).

"To uphold finding on social security benefits claim the evidence before hearing examiner must be greater than that which produces in his mind a suspicion as to facts sought to be proven." (D.C. Puerto Rico) Salgado v. Gardner, 265 F.Supp. 894.

See also Easttam v. Secretary of Health, Education and Welfare [8 Cir.], 364 F.2d 509.

■ 2. Having concluded upon examination of the entire record submitted that the plaintiff had been an "employee of Compañía de Fianzas de Puerto Rico under the definition of the Social Security Act, and that she had "employment" under the Act, we cannot adhere to the Agency's finding that the remuneration admittedly received by the plaintiff from Compañía de Fianzas de Puerto Rico does not constitute "wages" under the Social Security Act, whereas the Act—Sec. 209—defines "wages" as meaning

"* * *

"[and] remuneration paid after 1950 for employment."

and "employment" (Sec. 210) as covering "any service" of *"whatever nature"* performed.

As said in Social Security Board v. Nierotko, (1946) 327 U.S. 358, 66 S.Ct. 637, at page 641, 90 L.Ed. 718:

> "The very words 'any service * * performed * * * for his employer,' with the purpose of the Social Security Act in mind import breadth of coverage. * * *
>
> We think that 'service' as used by Congress in this definitive phrase means not only work actually done but the *entire* relationship for which compensation is paid to the employee by the employer."

Furthermore, the Social Security Board's Regulation No. 2, promulgated by the Board under the pertinent provisions of Social Security Act, 42 U.S.C.A., Sec. 1302 and still controlling, provides (Sec. 402.13):

> "Wages may be either actually or constructively paid to the employee. Wages are constructively paid when they are credited to the account of or set apart for the employee so that they may be drawn upon by him at any time although not then actually reduced to possession."

See Emlen v. Social Security Board, D.C., 54 F.Supp. 498, affirmed in 3 Cir., 148 F.2d 927.

Congress used a well understood word —"wages"—to indicate the receipts which under the Social Security Act were to govern taxes and benefits and, to keep its definition of "wages" from being narrowed by administrative interpretation, took to itself the enumeration in the Act—sections 209(a) (b) (c) (d) (e) (f) (g) (h) (i) and (j)—of the remuneration paid after 1950 that shall be excluded as wages from entitlement to social security insurance benefits. Evidently, plaintiff's earnings on which she bases her old age insurance claim here do not fall within any of the exclusions provided.

It is true that the President of the Compañía de Fianzas de Puerto Rico is the husband of the claimant, and majority stockholder, but this does not mean that the Corporation might not have validly employed the plaintiff as one of its officers in the position of Secretary for which she was legally elected and served, or that she was disqualified to earn and receive pay for her work.

As an individual, plaintiff is endowed with and entitled to full enjoyment of her constitutional right to be gainfully employed and the fact that she is a married woman may not be used by the Social Security Administration to disqualify her for entitlement to Old Age Benefits. Her marriage relationship with the President of Compañía de Fianzas de Puerto Rico did not divest her of her employer-employee relationship with said corporation.

It is immaterial here that the wages the plaintiff earned had engrossed or benefitted the conjugal community. There is nothing illegal on that.

Section 93 of the Civil Code (1930 ed.) empowers a wife to contract and appear in Court in all cases referring to the defense of her rights and property and to the exercise of a profession, *employment or occupation*; and by virtue of Section 1307 thereof, all property acquired during matrimony belongs to the community and not to any of the individual spouses. Under Section 1301 of said Civil Code of Puerto Rico, plaintiff's earnings from employment belonged to the matrimonial partnership, an entity distinct and separate to the individual spouses.

On the other hand, it is indisputed here that Compañía de Fianzas de Puerto Rico was organized and has been operating as a domestic insurer, as defined and governed by the Insurance Code of Puerto Rico, and that its legal entity is distinct and separate from any and all of its constituents or shareholders, and no one would seriously contend but that all servants of the Corporation, including its officials, are employees of the Compañía and not of its individual shareholders. Section 29.210 of the In-

surance Code of Puerto Rico, paragraph 3, provides that one of the five officers of an insurer as Compañía de Fianzas de Puerto Rico "shall be Secretary", who shall state under oath that he will fulfill the duties of the office faithfully. This plaintiff did. (Tr. 183, Exh. 20).

 Certainly we do not see how the corporate entity of Compañía de Fianzas de Puerto Rico could be ignored to impress the existence of an employer-employee relationship between spouses rather than between plaintiff and Compañía de Fianzas, absent any evidence of fraud or deceit, a condition which here is not even suggested. We find no evidentiary or legal support in the record for the Examiner's statement that the services rendered by the claimant were not in pursuit of a valid employer-employee relationship with Compañía de Fianzas de Puerto Rico but were rendered "as a friendly gesture to a family corporation".

In Stark v. Flemming (9 Cir. 1960) 283 F.2d 410, a widow over 65 formed a corporation to which she contributed all her assets—a leased out farm, some cash and an equity in a duplex. She became President and Treasurer under an agreement that she was to receive $400 a month as compensation for her services. Her son was the Corporation's Secretary and her daughter was its vice-President. Neither received any remuneration. The widow was connected with the corporation for only 18 units (months) or exactly the six quarters required to give her an insured status under the Social Security Act. Her $400 Salary would have entitled her to maximum benefits under the Act, *although the Corporation did not earn enough during the period to pay her salary* which, in fact, came largely from the capital which she herself had contributed. The services she performed were minimal, disproportionate to the amount of her salary, and of a kind incident to ownership of real property. The District Court for the Northern District of California (181 F.Supp.

539) stated that it was within the province of the Secretary whether the widow "had in fact been an 'employee' in receipt of 'wages' from a corporation or had in fact created a mere device to disguise the actual fact of receiving rents from real estate". The District Court held the Secretary "amply justified in disregarding the flimsy and apparent corporate device" and affirmed the latter conclusion that the widow was not entitled to benefits.

However, the Circuit Court of Appeals held in reversing that the Corporate entity could not be so disregarded by the Secretary, stating:

"But here there seems to have been proper adherence to the normal corporate routine. *And it is difficult to understand how the corporate arrangement would not have to be respected by others than the Secretary. And we think he must respect it too.* (The emphasis is ours).

"Congress could have provided that the motivation to obtain social security by organizing a corporation would defeat the end. *But did not.*" (Emphasis added.) 283 F.2d 410.

In Brannon v. Ribicoff, D.C., 200 F. Supp. 697 (1961) the Court decried that the Secretary applied *an arbitrary standard* in disregarding the corporate entity, saying:

"The Appeals Council's conclusion that an employer-employee relationship did not exist and that the earnings were *in fact* rentals rather than wages is predicated upon its findings that the corporation was 'created merely as a device to circumvent the provisions of the statute'; that the claimant set his own salary and that of his wife 'at his own whim'; * * and that the creation of the corporation was a 'fiction designed to present an apparent employee-employer relationship' which did not in fact exist; and that the corporation accordingly was a 'sham, with no plausi-

ble reason for the incorporation except to evade an important provision of the Social Security Act'.

"The corporate entity, however, may not be so summarily disregarded. As in *Stark*, the corporate arrangements would have to be respected by others and must be respected by the Secretary as well. Brannon Apartments, Inc. was duly and properly organized under the laws of Montana, plaintiff and his wife transferred their property to the corporation, directors and officers were regularly elected, corporate reports and tax returns were regularly filed on behalf of the corporation, and the corporation maintained accounting books and records. Business was transacted in the corporate name.

"* * * In family owned and other closed corporations, the stockholders and directors frequently carry on the corporate affairs in an informal manner, without holding formal meetings. Their failure to hold such meetings does not affect the validity of the acts of officers and directors which are authorized or ratified, though informally * * *." Such corporate acts may not be attacked collaterally. 2 Fletcher Cyclopedia Corporations, 240, § 394.1.

In Brannon v. Ribicoff, D.C., 200 F. Supp. 697 (1961) we read that:

"The mere fact that the services in operating the apartments had been performed by plaintiff and his wife without compensation prior to incorporation would not prevent payment for those services subsequent to incorporation."

Also:

"It is well settled that there is nothing improper or questionable about a person entering bona-fide employment for the express purpose of acquiring a *wage record* which will enable him to qualify for old-age insurance benefits. * * *

And lastly, in MacPherson v. Ewing, Federal Security Administrator (N.D. California, S.D.1952) 107 F.Supp. 666, the Administrator found the wages to have been what he designated as *"generosity pay"*, but the Court considered the administrative decision in law to be arbitrary and capricious and reversed it stating:

Whatever may have been the motives of the employer, whether prompted by generosity or selfishness, they are immaterial in determining the nature of the payments. The record, without dispute, shows that the relation of employer and employee existed. To permit the Administrator to rest decision upon the *motives* of the employer or upon the *effectiveness* or *adequacy* of the employee's services or labor, absent any element of fraud or deceit, would be to entrust to him a power far beyond that statutorily conferred upon him.

In this case we have made a searching and careful examination and study of the pleadings and the record submitted, and find no substantial evidence to support the Administrative decision. Therefore, defendant's motion for summary judgment must be and hereby is denied and the final decision of the Secretary of Health, Education and Welfare of July 17, 1967 which holds that the plaintiff is not entitled to old-age social security benefits on the basis of her application filed on July 16, 1965 must be and hereby is reversed.